[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 534 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 536 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 538 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 539 
The question in this case is, what was the subject insured; was it the barque, as its materials should from time to time be put together in their appropriate positions in the process of its construction, or was it also such materials as were completely prepared to enter into its structure, though not united to it, and which by reason of such preparation were rendered valueless for any other use. These questions must be answered by the language of the parties, which is to be read and interpreted in its plain and ordinary sense, subject to the rules of interpretation applicable to written instruments, to ascertain the intention which they by its use have expressed. That language designates "a barque" as the subject insured, and adds to this designation certain descriptive particulars, viz. that it was on the stocks near a ship before mentioned, and that it was building for Howes, Godfrey Co. The clause gives, further, a privilege to build another vessel alongside. The term, "a barque," standing by itself, has for its primary signification a completed vessel; but as the context shows that it could not in this case have been used by the parties in that sense, we are in the next place to see in what secondary or modified sense it has been used. To this inquiry the context affords an answer, as it discloses that the word is used, not in reference to a completed vessel, but with reference to a vessel of that class then about to be built, or then in course of actual construction; and that its construction was to be carried on at the pleasure of the insured, during the continuance of the risk, and that the insurance was to apply from time to time, not only to such part of the barque as at the inception of the risk was capable of designation by the term used, but also to such materials as from time to time should become part of the barque. It is plain that the keel of the intended vessel, when it had been blocked, and was in its place to be built upon, furnished a subject embraced by the language of the policy; it is equally plain that timbers in the rough, brought into the yard to be worked and put into the vessel, would not be covered by the policy. The inquiry then is, at what point in the process of building the vessel will such timbers cease to be *Page 540 
materials for the barque, and become a part of the barque. The answer, I think, is, when they have entered into the structure which, when completed, will be a barque. This construction accords with the ordinary use of language upon such subjects. If a man had entered this ship-yard and asked to be shown the barque building for Howes, Godfrey Co., he would have been shown the structure upon the keel, irrespective of how far the work had progressed, as being the barque; and it would have occurred to no one to point out materials not annexed to the keel, although completely prepared for that use, as being the barque. It is true that, in a technical sense, neither the keel, with the incomplete structure thereon, nor any of the materials intended for the vessel, is a barque, but in the ordinary use of language, the former would be so spoken of, and the others, though the work on them was all done, would not. It is in this ordinary sense that the language of parties is to be interpreted. I do not think it necessary to place any reliance upon the words "on the stocks near said ship," nor upon the expression of a "privilege to build another vessel alongside;" for though those words perhaps confirm the view which I have taken, indicating as they do an estimate of the amount of risk with reference to the precise locality to be occupied by the subject insured, yet the broader ground is more satisfactory that the language used in its ordinary acceptation, embraces the structure which, when completed, will be the barque, and does not embrace materials which are not become a part of the structure, by being fixed to or in it.
The decision below is objectionable in another aspect. If it be upheld, it follows that timber so far completed becomes thereupon part of the vessel, and consequently loses its character of "materials," and could not be insured under that name. It frequently happens that one man owns the keel and employs another, the ship builder, to furnish materials and finish the ship. Such materials, though completely finished, remain the property of the builder until they actually become a part of the structure of the ship. (Johnson v. Hunt, 11 Wend. 135;Merritt v. *Page 541 Johnson, 7 John. R. 473; Andrews v. Durant, 1 Kern.ante 35.) In such a case, upon a loss by fire, the ship owner could not recover upon a policy on the "ship building" for lack of interest, nor the ship builder upon a policy on "materials," because the property has lost the character of "materials," and become a part of the "ship building." This consequence must follow, unless courts are at liberty to hold property to be properly described as "materials" and not as "parts of a ship," or as "parts of a ship" and not as "materials," according as one or the other description is necessary to give indemnity to the assured.
That the construction given accords with the law regulating the change of property when the owner and builder are different persons; that the common use of language is in harmony with it, and that the test of liability is simple and easy of application, recommend it as fit to be adopted. The case of Mason v.Franklin Fire Ins. Co., (12 Gill John. 468,) presented substantially the same question, and was decided in the same way by the court of appeals in Maryland. Ellmaker v. Franklin Ins,Co., (5 Barr, 183,) is analogous, and was decided on the same principle in Pennsylvania.
The plaintiff should have been nonsuited, and the judgment must be reversed and a new trial ordered; costs to abide the event.